**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Josue Suarez,<br><br>Plaintiff,<br><br>-v-<br><br>E & N Chop Shop, Inc., Eliezer Yusupov, and Stefano Brucculeri,<br><br>Defendants. | 2:25-cv-4517 (NJC) (ARL) |

**MEMORANDUM AND ORDER**

NUSRAT J. CHOUDHURY, United States District Judge:

On August 13, 2025, Plaintiff Josue Suarez initiated this action against his former employer, E & N Chop Shop, Inc. ("Chop Shop"), Eliezer Yusupov, and Stefano Brucculeri (collectively, "Defendants"), bringing claims under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290, et seq., the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., the New York Labor Law ("NYLL"), N.Y. Lab. Law § 190 et seq., and the New York Codes, Rules, and Regulations ("NYCRR"), N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2, alleging discrimination, retaliation, hostile work environment, and state and federal wage law violations. (Compl., ECF No. 1.)

On October 7, 2025, Defendants moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12 (b)(6) ("Rule 12"). (Mot., ECF No. 8.) Suarez opposed. (Opp'n, ECF No. 10.) On May 15, 2026, I referred Defendants' motion to Magistrate Judge Arlene Lindsay for a written report and recommendation. (Elec. Order, May 15, 2026.) On August 13, 2026, Judge Lindsay issued a report and recommendation ("R&R") denying Defendants' motion. (ECF

No. 12.) A copy of the R&R was electronically served via ECF and instructed parties that they had fourteen days to file any objections. (*Id.*)

On August 27, 2026, Defendants timely filed objections to the R&R's recommendation to deny their motion to dismiss Suarez's third and fifth causes of action and motion to dismiss claims as barred under the applicable statute of limitations. (Objs., ECF No. 14.) On September 10, 2026, Suarez responded to the objections. (Objs. Resp., ECF No. 15.)

**R&R BACKGROUND**

I incorporate by reference all factual and procedural background set forth in the R&R (R&R at 1–5) and briefly summarize the R&R and Defendants' objections. First, the R&R recommended the denial of Defendants' request for dismissal of Suarez's third cause of action, which alleges discrimination on the basis of national origin and citizenship status in violation of the NYSHRL. It reasoned that Defendants' argument for dismissal—that Defendants' alleged report to Immigration and Customs Enforcement ("ICE") and request for Plaintiff's deportation from the United States is First Amendment protected activity—does not render the discrimination claims implausible, but rather is a response to Suarez's retaliation claims. (*Id.* at 5–10.) Second, the R&R found unpersuasive Defendants' First Amendment arguments as a basis to dismiss the Complaint's fifth cause of action alleging retaliation in violation of the NYSHRL. (*Id.*) Analyzing the allegations of the Complaint, the R&R determined that "a jury could conclude that the report to ICE was made in retaliation" to the provision of notice of this action to Yusorov by Suarez's counsel. (*Id.* at 10.) It reasoned that the Complaint's allegations concerning the "timing and motive" of Defendants' report to ICE plausibly allege a causal connection between the alleged protected activity and retaliatory action. (*Id*. at 8–9.) Third, the R&R found unsupported Defendants' argument that interpreting the NYSHRL to prohibit the

reporting of alleged immigration status to ICE violates the Supremacy Clause of the U.S. Constitution. (*Id.* at 10–12.) Upon analysis of the legislative history, the R&R found no evidence that Congress intended to preempt state anti-discrimination laws when enacting the Immigration Reform and Control Act ("IRCA") and noted that the legislative history actually "suggests Congress intended to *expand* existing anti-discrimination laws." (*Id.* at 10–12 (emphasis added).) Fourth, the R&R found that Suarez's FLSA, NYLL, and NYSHRL claims all fall within the applicable statute of limitations. (*Id.* at 12–14.)

Defendants objected to the R&R's determinations as follows. First, they argue that the R&R did not address the authority that supposedly supports their claim that their First Amendment protected speech was not retaliatory and that the IRCA preempts the NYSHRL. (Objs. at 4.) Second, Defendants contend that certain, unspecified allegations are beyond the statute of limitations and seek de novo review. (*Id*. at 6.)

**LEGAL STANDARDS**

In reviewing a report and recommendation, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). "When a party submits a timely objection to a report and recommendation, the district court reviews *de novo* the parts of the report and recommendation to which the party objected." *Bristol v. Noeth*, No. 17-cv-4220, 2026 WL 1743337, at *10 (E.D.N.Y. June 17, 2026); *see also* 28 U.S.C. § 636(b)(1). However, "when the objections are nonspecific or merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition" the court may review them for clear error. *Nambiar v. Cent. Orthopedic Grp., LLP*, 158 F.4th 349, 361 (2d Cir. 2025). Where a litigant's objections take "issue with a specific legal conclusion in the report and recommendation, they should be considered *de novo*, even if they repeat an argument raised before the magistrate judge." *Id.*

## DISCUSSION

Because Defendants timely objected to the R&R, I review the R&R de novo. None of these objections to the specific findings and conclusions set forth in the R&R are persuasive, and most simply rehash arguments Defendants previously made in their motion to dismiss submissions. Accordingly, I adopt the R&R in full and deny the motion to dismiss in its entirety.

### I. NYSHRL Claims Alleging Discrimination and Retaliation

First, Defendants fail to show that Suarez's discrimination claims under the NYSHRL are implausible or that the R&R made any error in its evaluation of the plausibility of such claims. As noted, Suarez's third cause of action alleges that Chop Shop and Yusupov intentionally discriminated against him by terminating his employment on the basis of his national origin and immigration status. (Compl. ¶ 70.) Defendants argue that these claims should be dismissed for two reasons: 1) reporting a person as undocumented to ICE is speech protected by the First Amendment; and 2) under the Supremacy Clause, federal immigration law purportedly preempts the NYSHRL's anti-discrimination provisions. (Mot. at 7–12.) Neither argument is persuasive.

First, the R&R is correct in concluding that Defendants' First Amendment argument is immaterial to the central issue in evaluating their motion to dismiss the discriminatory termination claims: whether such claims are *plausible*. Here, the Complaint alleges facts that state a prima facie case of discrimination and plausibly allege that Suarez's national origin and immigration status were the but-for-cause of his termination, including numerous alleged derogatory comments concerning undocumented persons made in 2023, 2024, and 2025, which preceded the termination of Suarez's employment on May 6, 2025. (R&R at 1–2; Compl. ¶¶ 16–30.) Moreover, the Complaint alleges that Defendants reported Suarez to ICE on or around August 6, 2025, which is around three months *after* Defendants terminated his employment.

(Compl. ¶¶ 30, 55–56.) In their objections, Defendants fail to explain how conduct that *post-dates* their decision to terminate Suarez's employment calls into question the allegations in the Complaint, which, taken as true, state a plausible claim that Suarez's national origin and citizenship status were the but-for-cause of Defendants' decision to terminate his employment.[1] Accordingly, the request to dismiss the third cause of action is denied.

Second, Defendants' assertion of a First Amendment defense as the basis for dismissal of the retaliation claim is unavailing. Suarez's fifth cause of action alleges that he engaged in protected activity by sending Yusupov a July 28, 2025 pre-litigation letter regarding his hostile work environment claims and that Defendants then reported Suarez to ICE on August 6, 2025, in an attempt to have him deported from the United States. (Compl. ¶¶ 54–58, 81–82.) Contrary to Defendants' contention, the question of whether the retaliation claim is plausible does not turn on whether the "filing [of] a truthful report of a crime" is constitutionally protected speech. (Mot. at 9.) Here, the Complaint's allegations clearly state a prima facie cause for retaliation and plausibly allege that the pre-litigation letter from Suarez's counsel notifying Defendants of Suarez's claim that they subjected him to a hostile work environment is a plausible but-for-cause cause of the alleged retaliatory conduct: that on August 6, 2025, two ICE officers were allegedly at a location where Suarez was scheduled to work because Defendants attempted to have Suarez detained and deported. (R&R at 3; Compl. ¶58.) Although Defendants do not articulate it as

---

[1] In their objections, Defendants restate their arguments but fail to specify how their alleged calling of ICE, which occurred after Suarez's termination, has to do with his termination claim. (*See* Objs. at 2 ("Defendants moved to dismiss Plaintiff's Third and Fifth Causes of Action insofar as they are predicated upon the allegation that Defendants reported, or attempted to report, Plaintiff's unlawful immigration status to Immigration and Customs Enforcement ("ICE"). Defendants argued that imposing civil liability under those circumstances violates both the First Amendment and the Supremacy Clause of the United States Constitution.").)

such, to the extent that Defendants offer their desire to promote immigration enforcement as a legitimate non-retaliatory reason for allegedly asking ICE to detain and deport Suarez, the Complaint alleges facts that make a plausible showing that Defendants' intent to retaliate was a but-for-cause of the alleged retaliatory conduct, including but not limited to the temporal proximity between the pre-litigation letter and the appearance of ICE at Suarez's work site, Yusupov's knowledge of Suarez's immigration status prior to receipt of the pre-litigation letter, and Yusupov's history of derogatory comments about undocumented people. Compl. ¶¶ 23–30; *see Guohua Liu v. Elegance Rest. Furniture Corp.*, No. 15-cv-5787, 2017 WL 4339476, at *4 (E.D.N.Y. Sept. 25, 2017) ("District courts in this Circuit have held that reporting or threatening to report an undocumented immigrant to immigration authorities constitutes a retaliatory employment action under the FLSA"); *Tortorici v. Bus-Tev, LLC*, No. 17-cv-7507, 2021 WL 4177209, at n.5 (S.D.N.Y. June 28, 2021) ("FLSA and NYLL retaliation claims are analyzed using the same three-step burden shifting framework that applies to Title VII and NYSHRL retaliation claims"); *Saleh v. City of N.Y.*, No. 06-cv-1007, 2007 WL 4437167, at *6 (S.D.N.Y. Dec. 17, 2007) ("the [retaliation] claim turns on the motive animating defendants' alleged report of Saleh's immigration status to ICE").

Third, Defendants fail to demonstrate that Congress intended to preempt the NYSHRL when enacting the Immigration Reform and Control Act ("IRCA"), 8 U.S.C. § 1324a. In their objections, they claim that the R&R does not "address Defendants' argument that this application of Human Rights Law § 296 . . . conflicts with the federal statutory scheme governing immigration enforcement . . . ." (Objs. at 4.) Yet Defendants entirely fail to engage with the R&R's analysis of the legislative history and finding that, while the IRCA did intend to limit employment of noncitizens, "the legislative history suggests Congress intended to *expand*

existing anti-discrimination laws." (R&R at 12 (emphasis added).) As the R&R noted with respect to Defendants' submissions in support of the motion to dismiss, Defendants' objections fail to provide any evidence that Congress intended to preempt state anti-discrimination laws by enacting the IRCA. (*Id.*)

Finally, while Defendants claim that the R&R "does not reconcile" the caselaw that they had cited in their motion to dismiss, Defendants' objections fail to identify any controlling authority ignored by the R&R in reaching any of the legal conclusions to which Defendants object. (Objs. at 4.) Defendants likewise fail to explain why the authorities addressed in the R&R are not binding or persuasive. (*See id.*) Rather, Defendants rely on irrelevant or out of Circuit cases that do not involve the issues at hand. Moreover, Defendants fail to explain the relevance of any of the cases they cite or to provide authority for the notion that simply because speech was involved in the alleged report of Suarez to ICE, that such conduct is not plausibly retaliatory in the context of the specific allegations of the Complaint. (*Id.*)

Thus, the motion to dismiss is denied with respect to Suarez's fifth cause of action.

## II. Timeliness of FLSA, NYLL, and NYSHRL Claims

Finally, Defendants contend that "a significant portion of the claims asserted by Plaintiff are time barred, even using the three year statute of limitations." (Mot. at 14–16.) In their objections, Defendants ask the Court to "dismiss those portions of Plaintiff's claims that accrued prior to August 13, 2022" but fail to explain which specific claims should be dismissed as untimely or to provide persuasive reasoning. (*See* Objs. at 6.)

As the R&R found, Suarez's claims are timely. First, Suarez does not bring any FLSA claims for damages relating to challenged conduct that took place before August 13, 2022. (R&R at 13, citing Opp'n at 13.)

Second, a six-year statute of limitations applies to the NYLL claims, and these claims are therefore timely as well. *See Rosa v. Park Ave. S. Mgmt. LLC*, No. 25 Civ. 7245, 2026 WL 1485256, at n.5 (S.D.N.Y. Apr. 30, 2026) (recognizing the six-year statute of limitations under the NYLL); *Byron v. Genovese Drug Stores, Inc.*, No. 10-cv-03313, 2011 WL 4962499, at *4 (E.D.N.Y. Oct. 14, 2011) ("The NYCRR Labor Law overtime claim has a statute of limitations of six years."). Suarez was hired in 2021 and initiated this action in 2025. (Compl. ¶ 17.) Therefore, the NYLL claims for failure to pay overtime wages, failure to provide wage statements and notices, and retaliation are within the six-year statute of limitations and thus timely. (Compl. ¶¶ 93, 98, 114.) Defendants' argument that "any of the Plaintiff's claims which accrued prior to August 13, 2022 are time barred as a matter of law" fails to account for the NYLL's six-year statute of limitations. (Mot. at 15.)[2]

Third, a three-year statute of limitations applies to the NYSHRL claims, although application of the continuing violation exception to Suarez's hostile work environment claims renders timely the challenge to certain conduct contributing to the hostile work environment that would otherwise fall outside of this timeframe, as the R&R found. *See Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007) (applying three-year statute of limitations to claims under the NYSHRL and the NYCHRL); *Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 446 (S.D.N.Y. 2023) ("NYSHRL claims have a three-year statute of limitations."); *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 251 (E.D.N.Y. 2012) ("To

[2] In their objections, Defendants restate that they previously "argued that Plaintiff's claims under the New York State Human Rights Law and 12 NYCRR § 142-2.2 are governed by the applicable three-year limitations period." (Objs. at 5.) They fail to cite any citation for this claim, and in any event, Suarez cites the NYCRR in his seventh cause of action brought under the NYLL. (Compl. ¶ 95.)

the extent that these discrete acts cumulatively create a hostile work environment, the continuing violations doctrine may save these claims under the NYSHRL."), *aff'd*, 713 F.3d 163 (2d Cir. 2013). Because the Complaint alleges that Suarez was subjected to alleged derogatory comments concerning undocumented persons that contributed to the alleged hostile work environment as recently as January 2025, the challenged conduct contributing to the hostile work environment from 2022 through 2025 is timely under the continuing violation doctrine. (Compl. ¶¶ 23–30.)

For all of these reasons, Suarez's NYLL, FLSA, and NYSHRL claims are not barred.

## CONCLUSION

For the reasons set forth above, I adopt the R&R in its entirety and deny Defendants' motion to dismiss.

Dated: Central Islip, New York
September 15, 2026

*/s/ Nusrat J. Choudhury*
NUSRAT J. CHOUDHURY
United States District Judge

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JOSUE SUAREZ,

Plaintiff,

**REPORT AND RECOMMENDATION**
25-CV-4517 (NJC) (ARL)

-against-

E & N CHOP SHOP, INC., ELIEZER YUSUPOV, and STEFANO BRUCCULERI,

Defendants.
-------------------------------------------------------------------X
**LINDSAY, Magistrate Judge:**

Plaintiff Josue Suarez ("Plaintiff") bring this action against E & N Chop Shop, Inc. ("Chop Shop"), Eliezer Yusupov ("Yusupov"), and Stefano Brucculeri ("Brucculeri") ("collectively "Defendants"), alleging violations of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290, et seq. ("NYSHRL"), the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., the New York Labor Law ("NYLL") including claims of discrimination, retaliation and hostile work environment. Before the Court, on referral from District Judge Choudhury, is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12 (b)(6) ("Rule"). For the reasons set forth below, the undersigned respectfully recommends the motion be denied.

## BACKGROUND

### A. Factual Background

The following facts are drawn from the Complaint and are accepted as true for purposes of the instant motion. *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993). These facts, however, do not constitute findings of fact by the Court. *See Colvin v. State University*

*College at Farmingdale*, No. 13-CV-3595 (SJF)(ARL), 2014 U.S. Dist. LEXIS 85678, 2014 WL 2864224, at *1 n.1 (E.D.N.Y. June 19, 2014).

Plaintiff was born in Honduras and has been an undocumented resident of the United States for 36 years (since he was five years old). ECF No. 1 ¶ 18. On September 27, 2021, Plaintiff began his employment as a Barber for Chop Shop, a barbershop, and Yusupov, the owner of Chop Shop. *Id.* at ¶ 17. Defendants were aware of Plaintiff's immigration status throughout his employment. *Id.* at ¶ 19.

During his employment, Yusupov and Brucculeri, another barber at Chop Shop, made discriminatory comments regarding undocumented persons and persons of Plaintiff's national origin. *Id.* at ¶ 23. "For example: (i) in February 2024, Brucculeri commented about how he could not believe undocumented immigrants were receiving 'free healthcare.' Yusupov then said, 'Right, Josh. You're getting free healthcare;' (ii) in January 2025, Brucculeri stated, 'I want to watch them all get deported,' to which Yusupov replied, 'Hopefully we will.'; and (iii) in January 2025, . . . Brucculeri stated in Plaintiff's and Yusupov's presence that he wanted 'them' deported with their families and 'take them from their beds.'" *Id.* ¶¶ 24-25. "[I]n 2023, Yusupov instructed Plaintiff to stay past his shift for a haircut appointment. While cutting the person's hair, Yusupov mentioned to the customer about an uptick in deportations and said, 'Right, Josh.' Yusupov then conversed with the customer about his job duties as an Immigrant and Customs Enforcement ("ICE") officer while Plaintiff was cutting his hair. Following the haircut, Yusupov told Plaintiff, 'See, I told you I know a lot of people. This is why you do what I say.'" *Id.* at ¶ 26. "Additionally, Yusupov often asked Plaintiff to attend Yusupov's vacations to central and South America to 'serve' as his 'translator,' knowing that Plaintiff could not leave the United States.

Yusupov asked Plaintiff to show him around countries such as Mexico, despite Plaintiff not being from those countries." *Id.* at ¶ 27.

According to Plaintiff, on May 6, 2025, Yusupov terminated Plaintiff following his opposition to a derogatory comment from Yusupov about undocumented persons. *Id.* at ¶¶ 29-30. Following his termination, on July 28, 2025, Plaintiff's counsel sent a pre-litigation letter to Yusupov regarding the unlawful hostile work environment Plaintiff was subjected to in violation of the NYSHRL, Plaintiff's unlawful termination in violation of the NYSHRL, and Defendants' failure to pay him overtime wages for hours worked in excess of 40 per week in violation of the FLSA and the NYLL/NYCRR. *Id.* at ¶ 54. Yusupov did not respond to the letter. *See id*. Instead, "[o]n August 6, 2025, Brucculeri's client, Eric Andrew, requested that Plaintiff give him a haircut at his residence at 7:00 pm on August 8, 2025." *Id.* at ¶ 55. When Plaintiff arrived to the residence, he noticed two ICE officers in front of the house. *Id*. at ¶ 56. Plaintiff did not park and enter the residence, but rather continued driving. *Id.* at ¶ 57. Plaintiff alleges that Defendants attempted to have Plaintiff detained and deported in retaliation for his counsel's pre-litigation letter, which is protected activity under the NYSHRL, the FLSA, and the NYLL. *Id.* at ¶ 58.

.

**B. Procedural Background**

Plaintiff filed the complaint in this action on August 13, 2025. ECF No. 1. Plaintiff asserts claims for hostile work environment under the NYSHRL against Chop Shop and Yusupov (First Cause of Action); aiding and abetting a hostile work environment by Defendants Yusupov and Brucculeri under the NYSHRL (Second Cause of Action); discrimination under the NYSHRL against Chop Shop and Yusupov (Third Cause of Action); retaliation under the NYSHRL against Chop Shop and Yusupov (Fourth Cause of Action); retaliation under the

NYSHRL against all Defendants (Fifth Cause of Action); failure to pay overtime wages under the FLSA against Chop Shop and Yusupov (Sixth Cause of Action); failure to pay overtime wages under the NYLL against Chop Shop and Yusupov (Seventh Cause of Action); failure to provide wage statements and notices under the NYLL (Tenth Cause of Action);[1] retaliation under the FLSA against Chop Shop and Yusupov (Eighth Cause of Action); and retaliation under the NYLL against Chop Shop and Yusupov (Ninth Cause of Action). Defendants filed a partial motion to dismiss the Complaint on October 7, 2025. ECF No. 8. Defendants have moved to dismiss Plaintiff's Third (discrimination under the NYSHRL against Chop Shop and Yusupov) and Fifth Causes of Action (retaliation under the NYSHRL against all Defendants), claiming that Defendants reporting of Plaintiff to ICE cannot form the basis of these claims. Defendants also move to dismiss a portion of Plaintiff's FLSA, NYLL and NYSHRL claims as time barred. By Order dated October 11, 2025, Judge Choudhury waived the requirement of a pre-motion conference and entered the following order: "Plaintiff shall amend the complaint or file any opposition to the motion to dismiss by October 31, 2025. It is unlikely that Plaintiff shall have a further opportunity to amend. If Plaintiff files any opposition to the motion to dismiss, Defendants shall file any reply to the motion to dismiss by November 14, 2025." Plaintiff filed a motion in opposition to the motion to dismiss on October 31, 2025. ECF No. 10. By Order dated May 15, 2026, the motion was referred to the undersigned for a Report and Recommendation by Judge Choudhury.

**DISCUSSION**

[1] This cause of action is labeled as the Fourth Cause of Action in the Complaint, the Court believes this to be a typographical error and to avoid repetition of Cause of Action Numbers, will refer to it as the Tenth Cause of Action throughout.

**A. Standard of Review**

**1. Motion to Dismiss**

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), in which the court set forth a two-pronged approach to be utilized in analyzing a motion to dismiss. District courts are to first "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [d]efendant has acted unlawfully." *Id*. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) (internal citations omitted)).

For the purposes of a Rule 12(b) motion, "a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated by reference, and to matters of which judicial notice may be taken." *Serdarevic v. Centex Homes, LLC,* 760 F. Supp. 2d 322, 328 (S.D.N.Y. 2010) (quotation omitted); *see Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).

**B. Motion to Dismiss**

**1. Plaintiff's NYSHRL Discrimination and Retaliation Claims**

Defendants move to dismiss Plaintiff's Third Cause of Action – NYSHRL Discrimination – and Fifth Cause of Action – NYSHRL Retaliation pursuant to Rule 12(b)(6), arguing that "[f]iling a truthful police report implicates speech that is protected under the Petition Clause of the First Amendment. . . . Here, the reporting of a crime to the appropriate federal authorities must also be constitutionally protected speech, and the Plaintiff's attempt to levy a civil penalty for this alleged conduct must necessarily fail." Def. Mem. at 8. Defendants also argue that in the event this Court declines to find his report to ICE protected speech under the First Amendment, any civil liability imposed upon Defendants would be in violation of the Supremacy Clause. Def. Mem. at 11.

The NYSHRL provides, in relevant part, "[i]t shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation, resort or amusement, because of the race, creed, color, national origin . . . of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof[.]" N.Y. Exec. Law § 296(2)(a). The NYSHRL requires a plaintiff to plausibly allege facts giving rise to an inference of discrimination based on the plaintiff's protected characteristics. *See Jones v. Beth Israel Hosp.*, No. 17-CV-03445 (GHW), 2018 U.S. Dist. LEXIS 62228, 2018 WL 1779344, at *12 (S.D.N.Y. Apr. 12, 2018).[2] With respect to Plaintiff's claim of retaliation, "[t]o establish a prima facie case of retaliation under the NYSHRL, . . . a plaintiff-employee must show that (1) she engaged in protected activity; (2) the employer was aware of this activity; (3)

---

[2] "Although the NYSHRL was previously less generous to plaintiffs, the law was amended in 2019 to bring standard for NYSHRL claims closer to the standard of the NYCHRL." *Downing v. Pragya Yadav*, No. 24-cv-04739 (NCM) (MMH), 2026 U.S. Dist. LEXIS 122092, 2026 WL 1578917 (E.D.N.Y. June 2, 2026).

the employer took adverse action against the employee; and (4) a causal connection exists between the protected activity and the adverse action." [3] *Malena v. Victoria's Secret Direct, LLC,* 886 F. Supp. 2d 349, 361-62 (S.D.N.Y. 2012).

Plaintiff alleges he was discriminated against on the basis of national origin and immigration status in violation of NYSHRL and that he was terminated on this basis. ECF No. 1, ¶70. Additionally, with respect to Plaintiff's retaliation claim, Plaintiff alleges that he complained to Chop Shop and Yusupov of the discriminatory treatment to which he was subjected and his counsel sent a letter to Defendnts describing his claims under the NYSHRL, FLSA and NYLL, which was protected activity. *Id.* at ¶¶ 80, 81. "Defendants then attempted to have Plaintiff deported in retaliation for his protected complaint in violation of the NYSHRL." *Id*. at ¶ 82.

Defendants contend that both claims should be dismissed because Defendants' "reporting a crime to the government is constitutionally protected, and the Plaintiff admits in his Complaint that he was in fact violating federal law by his presence in the United States, the claims under New York State Human Rights Law 296 must fail, as a matter of law, with respect to the issue of retaliation." Def. Mem. 9-10. First, Defendants have offered no explanation as to how or why their First Amendment rights are implication by Plaintiff's claim of discrimination, which is based upon his treatment and termination and not the report to ICE of his immigration status.

---

[3] "In cases of retaliation against former employees, 'the category of conduct that constitutes actionable retaliation includes more than just adverse employment actions or ultimate employment decisions.'" *Vazquez*, 2024 U.S. Dist. LEXIS 49645, 2024 WL 1191157, at *14 (quoting *Torres v. Gristede's Operating Corp*., 628 F. Supp. 2d 447, 472 (S.D.N.Y. 2008)). "Retaliation claims made by former employees for post-employment conduct are . . . allowed under 'relatively narrow' circumstances." *Porter v. MooreGroup Corp*., No. 17-CV-7405, 2020 U.S. Dist. LEXIS 398, 2020 WL 34434, *11 (E.D.N.Y. Jan. 2, 2020) (collecting cases). "One such circumstance 'includ[es] threatening immigration related consequences.'" *Stih v. Rockaway Farmers Market, Inc.,* No. 22-CV-3228, 2023 U.S. Dist. LEXIS 58299, 2023 WL 2760492, *5 (E.D.N.Y. Apr. 3, 2023) (quoting *Porter*, 2020 U.S. Dist. LEXIS 398, 2020 WL 32434, *11 (collecting cases)).

Accordingly, the undersigned recommends that Defendants' motion to dismiss Plaintiff's claim of discrimination on the basis of Defendants' First Amendment rights be denied.

Next, with respect to Plaintiff's claim of retaliation under the NYSHRL the Court notes that Defendants have not moved to dismiss Plaintiff's retaliation claims under the FLSA or NYLL, presumably because "[m]ultiple courts have found FLSA retaliation when a former employer 'threaten[s] immigration related consequences.'" *Vazquez v. 142 Knickerbocker Enters., Corp.*, No. 13-CV-6085 (EK) (PK), 2024 U.S. Dist. LEXIS 183551, at *37, 2024 WL 4437164 (E.D.N.Y. Oct. 7, 2024) (citing *Walsh v. Ip,* No. 22-CV-00886, 2023 U.S. Dist. LEXIS 82295, 2023 WL 3377629, at *3 (N.D.N.Y. May 11, 2023); *Porter*, 2020 U.S. Dist. LEXIS 398, 2020 WL 32434, at *11 (collecting cases)). The same is true under the NYLL. *Santos v. E T & K Foods, Inc.*, No. 16CIV7107DLIVMS, 2017 U.S. Dist. LEXIS 100495, 2017 WL 9256490, at *4 (E.D.N.Y. June 27, 2017) (allowing retaliation claim under NYLL based upon threat to report immigration status).

Defendants' report to ICE challenging Plaintiff's immigration status is actionable under the NYSHRL for the same reason. *See, e.g., Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010) (holding that courts should apply the same standard in FLSA retaliation cases as they do in Title VII retaliation cases); *Tortorici v. Bus-Tev, LLC*, No. 17-cv-7507 (PAC) (KHP), 2021 U.S. Dist. LEXIS 120627, at n.5 (S.D.N.Y. June 28, 2021) ("FLSA and NYLL retaliation claims are analyzed using the same three-step burden shifting framework that applies to Title VII and NYSHRL retaliation claims"). It is the timing and motive of Defendants' reporting that supports Plaintiff's claim for retaliation – i.e., establishes a causal connection between the protected activity and the adverse action. *See, e.g., Su v. Bevins & Son*, No. 23-cv-560, 2024 U.S. Dist. LEXIS 82529, 2024 WL 2059333 (D. Vt. May 7, 2024) ("a true report of unlawful conduct can

be considered unlawful retaliation" and "an employer's free speech right to comment upon matters that effect the business is firmly established. . . .But when such commentary is 'a threat of retaliation based on misrepresentation and coercion' it is 'without the protection of the First Amendment.'"); *Contreras v. Corinthian Vigor Insurance Brokerage, Inc*., 103 F. Supp. 2d 1180 (N.D. Cal. 2000) (a reasonable jury could infer a causal connection between the employee's protected activities (filing the complaint and participating in the proceedings before the California Labor Commissioner) and the materially adverse action (reporting Contreras's undocumented status and false social security number)); *Liu v. Elegance Rest. Furniture Corp*., No. 15-CV-5787 (RRM)(SMG), 2017 U.S. Dist. LEXIS 160110, at *14 (E.D.N.Y. Sep. 25, 2017) ("District courts in this Circuit have held that reporting or threatening to report an undocumented immigrant to immigration authorities constitutes a retaliatory employment action under the FLSA"); *Saleh v. City of N.Y.*, No. 06-CV-1007, 2007 U.S. Dist. LEXIS 92193, at *16, 2007 WL 4437167 (S.D.N.Y. Dec. 17, 2007) ("the [retaliation] claim turns on the motive animating defendants' alleged report of Saleh's immigration status to ICE"). In *Saleh,* the Court denied a motion for summary judgment noting that "it may be sound practice for NYPD officers to alert ICE when they encounter unlawful aliens under normal circumstances, but when they do so for retaliatory purposes, they run afoul of the Constitution." 2007 U.S. Dist. LEXIS 92193, at * 26, 2007 WL 4437167 The *Saleh* Court stated that where a plaintiff "bases his retaliation claim on defendants' alleged report to ICE, and therefore must establish a causal connection between his protected speech -- filing the CCRB complaint against Hickman -- and the alleged adverse action -- defendants' report of his immigration status to ICE" the validity of the information provided to ICE is not relevant. 2007 U.S. Dist. LEXIS 92193, at *17, 2007 WL 4437167 Here, Defendants argue that reporting violations of the law that actually happen cannot

form the basis of a claim for retaliation. Def. Mem. at 9. As recognized by the Court in *Saleh*, this is not the law. Plaintiff acknowledges that "Defendants' report to ICE would have likely been protected speech had they done so upon first learning of Plaintiff's immigration status. Instead, they waited nearly four years and only reported him after Plaintiff asserted NYSHRL, FLSA, and NYLL claims against them." Pl. Mem. at 7. Because a jury could conclude that the report to ICE was made in retaliation for the letter of Plaintiff describing his potential claims this allegation may form the basis of Plaintiff's claim of retaliation. Thus, the undersigned respectfully recommends that Defendants' motion to dismiss Plaintiff's claim for retaliation under the NYSHRL on the basis of their First Amendment right to report Plaintiff to ICE be denied.

Defendants also argue that interpreting the NYSHRL to prohibit the reporting of a violation of the law i.e. Plaintiff's immigration status - violates the Supremacy Clause. Def. Mem. at 10-14. This argument is unsupported.

The Supremacy Clause establishes that "federal law 'shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.'" *PLIVA, Inc. v. Mensing*, 131 S. Ct. 2567, 2577, 180 L. Ed. 2d 580 (2011) (quoting U.S. Const., Art. VI, cl. 2). "Consistent with that command, we have long recognized that state laws that conflict with federal law are 'without effect.'" *Altria Group, Inc. v. Good*, 555 U.S. 70, 76, 129 S. Ct. 538, 172 L. Ed. 2d 398 (2008) (quoting *Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S. Ct. 2114, 68 L. Ed. 2d 576 (1981)). The Second Circuit has summarized the Supreme Court's doctrine of preemption as follows:

> [T]hree types of preemption exist: (1) express preemption, where Congress has expressly preempted local law; (2) field preemption, where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no

> room for state law; and (3) conflict preemption, where local law conflicts with federal law such that it is impossible for a party to comply with both or the local law is an obstacle to the achievement of federal objectives.

*New York SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97, 104 (2d Cir. 2010) (quotation marks and citations omitted); *see also English v. Gen. Elec. Co*., 496 U.S. 72, 78-79, 110 S. Ct. 2270, 110 L. Ed. 2d 65 (1990).

"Under all of these three preemption tests—express, field, and conflict—our task is to determine whether, and to what extent, Congress intended to preempt state law." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist*., 673 F.3d 84, 95 (2d Cir. 2012). Thus, "[t]he purpose of Congress is the ultimate touchstone in every pre-emption case." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485, 116 S. Ct. 2240, 135 L. Ed. 2d 700 (1996) (citations and quotation marks omitted); *see also English,* 496 U.S. at 78-79 ("Pre-emption fundamentally is a question of congressional intent."). "Congress may manifest its intent to preempt state or local law explicitly, through the express language of a federal statute, or implicitly, through the scope, structure, and purpose of the federal law." *New York SMSA Ltd. P'ship*, 612 F.3d at 104.

Defendants have not convinced the Court that Congress intended to pre-empt the NYSHRL when enacting the Immigration Reform and Control Act ("IRCA"), 8 U.S.C. § 1324a. The IRCA is "a comprehensive scheme prohibiting the employment of illegal aliens in the United States." *Hoffman Plastics Compounds, Inc. v. NLRB*, 535 U.S. 137, 147 (2002). "Employers who violate IRCA are punished by civil fines, § 1324a(e)(4)(A), and may be subject to criminal prosecution, § 1324a(f)(1)." *Id*. at 148. Nevertheless, in enacting the IRCA, Congress expanded anti-discrimination rights to include alienage discrimination because "Congress believed that no effective remedy existed for citizenship discrimination when it passed the Immigration Reform and Control Act." *Murtaza v. N.Y.C. Health & Hosps. Corp.*, 97-CV-4554,

1998 U.S. Dist. LEXIS 6231, 1998 WL 229253 (E.D.N.Y. Mar. 31, 1998) (citing H.R. Rep. No. 682(I)(Judiciary Committee), 99th Cong., 2d Sess. 69, reprinted in 1986 U.S. Code Cong. & Admin. News 5672-73 (stating that alienage discrimination coverage is not conferred by Title VII); H.R. Rep. No. 682(II)(Committee on Education and Labor)(Minority Views), 99th Cong., 2d Sess. 46, reprinted in 1986 U.S. Code Cong. & Admin. News 5786 ("No Federal law now prohibits discrimination on the basis of citizenship status"); 131 Cong. Rec. S11435 (daily ed. September 13, 1985)(Statement of Sen. Hart)("Section 1981 of the Civil Rights Act of 1866 is not a trustworthy guardian of alien rights")). As enacted, the "IRCA prohibits citizenship status and national origin discrimination in hiring and firing employees, with certain exceptions." *Cameron v. Bellevue Police Dep't*, 2024 U.S. Dist. LEXIS 195529, 2024 WL 4592892, at *3 (W.D. Wash. Oct. 28, 2024) (citing 8 U.S.C. § 1324b.3). Thus, rather than demonstrating an intent to pre-empt existing anti-discrimination laws, the legislative history suggests Congress intended to expand existing anti-discrimination laws. Here, Defendants have provided, and the Court has found, no evidence that Congress intended to pre-empt state anti-discrimination laws by enacting the IRCA. *See, e.g., Moodie v. Fed. Reserve Bank of New York,* 831 F. Supp. 333, 336 (S.D.N.Y. 1993) (noting that preemption hinges on congressional intent, "[t]he Bank has put nothing before us to support the view that considerations relating to employment discrimination were of concern to the Congress at that time").

Accordingly, the undersigned recommends that the Court deny Defendants' motion to dismiss to the extent Defendants argue the NYSHRL is pre-empted by the IRCA.

**2. Plaintiff's FLSA, NYLL and NYSHRL Claims Are Not Time Barred**

According to Defendants' the Plaintiff's submissions to this Court establish that even if the Defendants' conduct was found to be intentional, a significant portion of the FLSA and

NYLL claims asserted by Plaintiff are time barred using the three-year statute of limitations and that Plaintiff's claims of hostile work environment that are alleged to have accrued prior to August 13, 2022 are also time barred.[4] Def. Mem. at 14-15. According to Plaintiff, he has not asserted any FLSA claims for damages from before August 13, 2022, therefore Defendants' argument regarding his FLSA claim is moot. Pl. Mem. at 13. In the Complaint, Plaintiff alleges that "[t]hroughout the period covered by the applicable statute of limitations, Chop Shop and Yusupov knowingly failed to pay Plaintiff the statutorily required overtime rate for all hours worked in excess of 40 hours per week." *See* ECF No. 1, ¶ 87. Thus, given this qualification, Plaintiff's FLSA overtime claims are limited to claims accruing after August 13, 2022.

With respect to Plaintiff's NYLL claims, claims brought pursuant to the NYLL are subject to a six-year statute of limitations. *See Byer v. Periodontal Health Specialists of Rochester, PLLC*, 20-1751 Civ., 2021 WL 3276725, at *2 (2d Cir. 2021); *Rosa v. Park Ave. S. Mgmt. LLC*, NO. 25 Civ. 7245 (PAE) (SLC), 2026 U.S. Dist. LEXIS 119849, 2026 WL 1485256 (S.D.N.Y. Apr. 30, 2026) ("[u]nder the NYLL, the statute of limitations is six years"). Thus, Plaintiff's claims, which began on September 17, 2021 when Plaintiff was hired, are all timely.

Finally, the statute of limitations for Plaintiff's NYSHRL claims is three years, other than with respect to Plaintiff's claim for hostile work environment, which is governed the continuing violation exception. *See Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009) ("The Court applied the continuing violation doctrine because a hostile work environment claim

[4] "Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015); accord *Ferrarini v. Irgit*, No. 19 Civ. 0096, 2020 U.S. Dist. LEXIS 6377, 2020 WL 122987, at *2 (S.D.N.Y. Jan. 9, 2020).

challenges 'repeated conduct' that 'occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own.'") (quoting *Morgan*, 536 U.S. at 115); *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 251 (E.D.N.Y. 2012) ("To the extent that these discrete acts cumulatively create a hostile work environment, the continuing violations doctrine may save these claims under the NYSHRL."), aff'd, 713 F.3d 163 (2d Cir. 2013).

Many of the acts complained of by Plaintiff occurred between 2023 and 2025, thus all discrimination claims based upon these occurrences are timely. *See, e.g.*, ECF No. 1 ¶¶ 24, 26, 29. With respect to Plaintiff's hostile work environment claim, in *National Railroad Passenger Corp. v. Morgan*, the Supreme Court explained that "a hostile work environment claim ... will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." 536 U.S. 101, 122, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002). Indeed, "the continuing-violation exception should be applied to hostile work environment claims because such claims challenge 'repeated conduct' that 'occurs over a series of days or perhaps years.'" *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 582 (S.D.N.Y. 2011) (quoting *Morgan,* 536 U.S. at 115). Thus, "so long as one act is within the limitations period, all of the acts can be relied on to show a hostile work environment." *Bermudez*, 783 F. Supp. 2d at 582; *see also Shomo*, 579 F.3d at 181; *Washington v. County of Rockland*, 373 F.3d 310, 318 (2d Cir. 2004). As discussed above, the majority of the acts noted by Plaintiff occurred within the three year limitation period.

Accordingly, the undersigned respectfully recommends that Defendants' motion to dismiss on the basis of timeliness be denied.

**OBJECTIONS**

A copy of this Report and Recommendation is being electronically served by the Court on the parties. Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 14 days. Failure to file objections within this period waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed R. Civ. P 72; *Mejia v. Roma Cleaning, Inc*., No. 17-3446, 2018 U.S. App. LEXIS 28235, 2018 WL 4847199, at *1 (2d Cir. Oct. 5, 2018) ("Plaintiff has waived any objections to the Magistrate's finding" by failing to timely object); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997).

Dated: Central Islip, New York
August 13, 2026

_________/s/_________________

ARLENE R. LINDSAY
United States Magistrate Judge